UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NORLAN GONZALEZ, et al.,

                Plaintiffs,

-against-

FRESH START PAINTING CORP., et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

18-CV-11124 (PMH)

PHILIP M. HALPERN, United States District Judge:

      Norlan Gonzalez ("Gonzalez"), Holman Calderon Arce ("Arce"), and Juan Urrutia ("Urrutia," and collectively, "Plaintiffs") bring this action against Fresh Start Painting Corp. ("Fresh Start") and Gregory Fucci, Jr. ("Fucci," and with Fresh Start, "Defendants") seeking, *inter alia*, redress for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and New York State Labor Law ("NYLL"), N.Y. Lab. Law §§ 195, 650 *et seq*. (*See* Doc. 1, "Compl.").

      Plaintiffs filed their Complaint on November 29, 2018. (*See id.*). Defendants filed their Answer on February 1, 2019. (Doc. 10). On February 7, 2020, Judge Román—before whom this matter proceeded before it was transferred to this Court on April 3, 2020—issued: (1) an Order of Reference referring this case to Magistrate Judge Paul E. Davison for general pretrial matters; and (2) a Civil Case Discovery Plan and Scheduling Order. (Doc. 22; Doc. 23). After receiving extensions, discovery in this matter closed on December 31, 2020. (*See* Doc. 42; *see also* Doc. 43 (joint letter from the parties advising, on December 30, 2020, that discovery was complete)).

      The parties thereafter engaged in pretrial practice with jury selection slated to begin on January 5, 2022. (*See* Doc. 51; Doc. 58; Doc. 59; Doc. 60; Doc. 61; Doc. 62; Doc. 63; Doc. 64; Doc. 65; Doc. 67; Doc. 68; Doc. 69; Doc. 70; Doc. 71; Doc. 72; *see also* Dec. 7, 2021 Min. Entry). On December 17, 2021—approximately two weeks before trial—the parties advised jointly that:

> [w]ith the mediator's assistance, the Parties were able to resolve in principle only that portion of Plaintiffs' claims that concern Defendants' statutory liability to the Plaintiffs, as alleged. The Parties were unable to reach settlement of that portion of Plaintiffs' claims related to recovery of their attorneys' fees and costs, which the Parties previously agreed would be determined by the Court.

(Doc. 74 at 1). The Court issued an Order cancelling trial and scheduled a telephone conference for December 20, 2021. (Doc. 75).

Counsel appeared for the December 20, 2021 telephone conference and later that same day, in compliance with the discussion held on the record, filed a Proposed Stipulation and Order for the Court's approval. (Dec. 20, 2021 Min. Entry; Doc. 76; Doc. 76-1). The Stipulation and Order ("Stipulation") was entered the next day. (Doc. 77). The parties, in the Stipulation, agreed to "meet and confer in good faith to resolve the open claim as to the amount of attorneys' fees and costs" and, in the event no agreement was reached, set a briefing schedule for a motion seeking that relief. (*Id*. ¶¶ 1-2). The Stipulation provided further, in pertinent part, as follows:

> [i]n the event the fee application requires determination by the Court, the Parties agree to be bound by the monetary amount determined by the Court. The Parties agree that such amount shall be incorporated into a subsequent Settlement Agreement submitted for approval, which shall provide for Judgment to be entered against Defendants, jointly and severally, in an amount so determined by the Court for attorneys' fees and costs.

(*Id*. ¶ 3). The parties, failing to reach an agreement as to legal fees and costs, filed their motion papers in accordance with the schedule outlined in the Stipulation: Plaintiffs filed their moving papers on January 10, 2022, and Defendants filed their opposition papers on January 17, 2022. (Doc. 78; Doc. 79; Doc. 80; Doc. 81; Doc. 82). Plaintiffs sought an award of $319,928.05, representing: (1) $314,397.50 in fees; and (2) $5,530.55 in costs. (Doc. 79 ¶ 7).

The Court, upon review of the submissions, scheduled oral argument to proceed in-person on February 28, 2022. (*See* Doc. 83; Doc. 86).

On the record at the February 28, 2022 appearance, the Court directed the parties to confer further to resolve the dispute without the Court's intervention. (Feb. 28, 2022 Min. Entry). Counsel met in the jury room, outside the Court's presence. (*Id.*). No resolution was, however, reached. (*Id.*). The Court, at that proceeding: (1) concluded that the claimed costs ($5,530.55) were reasonable and would be awarded; and (2) directed that by March 11, 2022: (a) Defendants would serve and file a line-by-line analysis of what charges they believed were unreasonable (alongside explanations therefor); and (b) Plaintiffs would serve and file a detailed affirmation outlining, with exact dates, the tenure at the firm of each person who billed to this matter. (*Id.*). The parties filed their supplemental submissions on March 11, 2022. (Doc. 87; Doc. 88).

For the reasons set forth below, the motion for fees and costs is GRANTED IN PART.

## **BACKGROUND**

The underlying dispute in this matter—as set forth in the Complaint, which totals just over 14 double-spaced pages—is a straightforward labor case in which Plaintiffs complain generally that Defendants "fail[ed] to pay earned wages, including earned overtime wages, fail[ed] to pay earned wages when due, fail[ed] to furnish Plaintiffs with required pay rate notices and wage statements, and for Defendants' unjust enrichment from their foregoing unlawful acts." (Compl. ¶ 1). The parties have settled Plaintiffs' claims—subject to Court approval in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) and its progeny—for $85,000. (Doc. 77; Doc. 79 ¶ 3; Doc. 81 ¶ 13). The single issue standing in the way of submitting a settlement for the Court's review is the attorneys' fees to be awarded Plaintiffs' counsel.

Between January 16, 2018 and November 29, 2018 (i.e., from counsel's first encounter with Plaintiffs through the Complaint's filing), counsel billed approximately 89.00 hours. (Doc. 79-1 at 2-8). That period included roughly: (1) 7.00 hours to draft, review, revise, translate, and send the initial demand letter to Defendants; (2) 4.00 hours to draft, review, revise, meet about, and send a follow-up demand e-mail to Defendants; (3) 18.00 hours to calculate, review, revise, and meet to discuss Plaintiffs' damages and settlement demands; (4) 21.00 hours to draft, review, revise, meet, correspond regarding, "[r]eview status of plaintiffs' review" of, and finalize the Complaint and Consents to Become a Party Plaintiff; and (5) 12.00 hours to translate the Complaint and Consents to Become a Party Plaintiff.

From November 30, 2018 through February 9, 2021 (i.e., the Case Management Conference following close of discovery), counsel billed approximately 365.00 hours. (*Id*. at 8-34). That period included about: (1) 10.00 hours to prepare 20 document demands, 8 interrogatories, and an unclear number of deposition notices; (2) 11.00 hours to respond to 30 document demands and 8 interrogatories, and produce 10 pages of documents in response to Defendants' document demands; (3) 107.00 hours preparing for 5 depositions; (4) 52.00 hours to take 2 and defend 3 depositions; and (5) 23.00 hours to prepare a summary judgment motion that was never pursued.[1]

From February 10, 2021 until November 19, 2021 (i.e., filing opposition to Defendants' motions *in limine*), counsel billed approximately 285.00 hours. (*Id*. at 34-46). The tasks billed in this span include around: (1) 130.00 hours to prepare the 12-page Proposed Joint Pretrial Order;

---

[1] Of the 52.00 hours billed in connection with appearing for depositions, the majority of entries are billed in blocks that make it impossible to decipher just what time was committed to any given task. For example, on November 12, 2020, Mr. Hershberg billed 5.60 hours with the following description: "Prepare for/participate in deposition of Juan Urrutia; prepare for second day of same; prepare for Arce deposition." (Doc. 79-1 at 25). This list does not include, to the extent possible, billing for reviewing transcripts.

4

(2) 66.00 hours to prepare the 5-page Proposed Joint Voir Dire, 22-page Proposed Joint Jury Charge, and 11-page Proposed Joint Verdict Form; (3) 21.00 hours to prepare the 6-page letter opposing Defendants' motions *in limine*; and (4) 10.00 hours for internal discussion between attorneys regarding mediation and 4.00 hours to prepare for and participate in a call with Defendants' counsel. (*See also* Doc. 50; Doc. 58; Doc. 59; Doc. 60; Doc. 64; Doc. 67; Doc. 69).[2]

From November 20, 2021 until January 10, 2022 (i.e., filing the instant motion), counsel billed approximately 175.00 hours. (Doc. 79-1 at 46-51). The time entries during this last portion of the litigation includes nearly 43.00 hours for making the extant application—a submission that includes under 20 double-spaced pages of substantive legal analysis.

## STANDARD OF REVIEW

The FLSA instructs that "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant . . . ." 29 U.S.C. § 216(b). The NYLL likewise provides that a prevailing employee may recover "reasonable attorney's fees." *See* N.Y. Lab. Law §§ 198(1-a), (1-d); *see also Francois v. Mazer*, 523 F. App'x 28, 29 (2d Cir. 2013) ("Reasonable attorney's fees and costs are awarded as a matter of right to a prevailing plaintiff in an action under the FLSA or NYLL."). "[T]he burden of proving the reasonableness and the necessity of the hours spent and the rates charged" rests with the party seeking payment. *Cortes v. Juquila Mexican Cuisine Corp.*, No. 17-CV-03942, 2021 WL 1193144, at *1 (E.D.N.Y. Mar. 29, 2021). While determining the reasonable fee in any specific scenario is a matter of discretion for the Court, "[t]he Supreme Court and Second Circuit have held that 'the lodestar—the product of a reasonable hourly rate and the reasonable hours required by the case—

---

[2] Plaintiffs represent that "[t]he time expended on preparing for trial resulted in 34 percentage [sic] of the hours for which Plaintiffs are seeking their attorneys' fees . . . ." (Doc. 80 at 8-9).

5

creates a presumptively reasonable fee.'" *Garcia-Severino v. TDL Restoration, Inc.*, No. 18-CV-11401, 2020 WL 7239678, at *1 (S.D.N.Y. Dec. 9, 2020) (quoting *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) (explaining that "the lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case" (emphasis in original)).

I.   Hourly Rates

Reasonable hourly rates are those "in line with those [rates] prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Cruz v. Loc. Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984) (alteration in original)).

The Court has reviewed the education, qualifications, experience, and reputation of the individuals who performed work in this case and finds that the reduced rates sought are generally reasonable. (Doc. 79 ¶¶ 10-21; Doc. 79-3). There is, however, one exception: Ms. Hagit Feder, a certified fraud examiner, senior compliance administrator, and paralegal. (Doc. 79 ¶ 18). Plaintiff seeks reimbursement for that individual's work at hourly rates ranging from $175 to $250. (Doc. 79-3; Doc 80 at 12). This is unreasonable. The firm's paralegal, legal secretary, records clerk and interpreter, and legal intern—that is, all other non-attorney support staff—billed at $100 per hour. (*See generally* Doc. 79-3). Notwithstanding Ms. Feder's accomplishments, her hourly rate is reduced to $100. *See Morales v. MW Bronx*, No. 15-CV-06296, 2017 WL 4444663, at *2-3 (S.D.N.Y. Oct. 5, 2017) (finding an hourly rate of $100 "for the services of legal support staff members" reasonable); *Guo v. Tommy's Sushi, Inc.*, No. 14-CV-03964, 2016 WL 452319, at *4-5 (S.D.N.Y. Feb. 5, 2016) (reducing the hourly rate from $150 to $100 for "a paralegal, interpreter,

and law clerk"); *see also Wong v. Hunda Glass Corp.*, No. 09-CV-04402, 2010 WL 3452417, at *2 (S.D.N.Y. Sept. 1, 2010) ("To determine the prevailing rate, courts may conduct an empirical inquiry based on the parties' evidence or may rely on the court's own familiarity with the rates if not such evidence is submitted." (internal quotation marks omitted)).

II. <u>Hours Expended</u>

"In reviewing a fee application, the court 'should exclude excessive, redundant or otherwise unnecessary hours.'" *Lin v. Joe Japanese Buffet Rest. Inc.*, No. 17-CV-03435, 2022 WL 2718584, at *7 (E.D.N.Y. June 7, 2022) (quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)), *adopted by* 2022 WL 2716487 (E.D.N.Y. July 13, 2022). "[C]ourts may reduce fees 'where the hours billed are disproportionate to the quantity or quality of the attorneys' work.'" *Inga v. Nesama Food Corp.*, No. 20-CV-00909, 2021 WL 3624666, at *15 (S.D.N.Y. July 30, 2021) (quoting *Changxing Li v. Kai Xiang Dong*, No. 15-CV-07554, 2017 WL 892611, at *21 (S.D.N.Y. Mar. 7, 2017)). "In making this examination, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Tambriz v. Taste & Sabor LLC*, 577 F. Supp. 3d 314, 334 (S.D.N.Y. 2021) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)), *adopted by* 2022 WL 282918 (S.D.N.Y. Jan. 31, 2022). To this end, the Court need not conduct a line-by-line analysis. As explained by the Supreme Court:

> trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

*Fox v. Vice*, 563 U.S. 826, 838 (2011).

The 52-page, single-spaced billing record at issue is plagued by myriad shortcomings, chief among them is that the record evidences: (1) duplicative and excessive billing; (2) block billing; and (3) vague entries. The Court addresses examples of these failings *seriatim*.

As to the first category of deficiencies, staffing this straightforward wage case with 10 timekeepers is a recipe for disaster from a reasonable billing point of view. Duplicate and triplicate review of even the most basic documents makes the billing unreasonable per se. Counsel may choose to staff and bill 6 attorneys and 4 staff members to attend to the needs of 3 plaintiffs, but that decision cannot form the basis of a request for reasonable attorneys' fees. The staffing of this many timekeepers for this straightforward problem is completely unnecessary. A simple review of the hours spent and tasks accomplished during the various stages of litigation, as described *supra*, makes this point loud and clear. With respect to this overstaffing practice, by way of example, Mr. Hershberg—an attorney admitted to practice in New York State in 2011 who has "dedicated his legal career solely" to labor and employment law—was the individual who conducted all depositions, yet he, Ms. Drogin, Ms. Toevs, and Ms. Cardona *all* billed time to "prepare for depositions" or some variation thereof. (*See* Doc. 79 ¶ 14; Doc. 79-1 at 15-28).

In connection with excessive billing, the billing record is replete with no less than 48 separate billing entries that describe calculating, reviewing, discussing, or updating Plaintiffs' damages calculation. (*See generally* Doc. 79-1). Yet, as Defendants highlight in their supplemental submission, notwithstanding the various billing entries involving calculating or re-calculating the damages at issue, "Plaintiffs' position on damages . . . has remained the same from the time the Complaint was filed until the filing of the JPTO." (Doc. 88 at 2). Additional examples of waste in this subcategory abound: 21.00 hours to review and respond to basic discovery demands is excessive—especially when Plaintiffs produced *10 pages* of documents and Defendants produced

*255 pages*; 107.00 hours to prepare 3 witnesses for straightforward depositions and take 2 depositions is way out of line; and 196.00 hours to prepare a Proposed Joint Pretrial Order, Proposed Joint Voir Dire, Proposed Joint Jury Charge, and Proposed Joint Verdict Form is, like the other tasks enumerated, simply excessive.

The Court, to account for this category of deficiencies, has discretion to apply an across-the-board reduction to the hours expended. *See Nikonov v. Flirt NY, Inc.*, No. 19-CV-07128, 2022 WL 1443429, at *2 (S.D.N.Y. May 6, 2022) (noting that "[d]istrict courts have ample discretion in assessing the extent of staffing that is appropriate for a given case," and "should reduce the hours actually expended to account for duplicative or repetitive work" (internal citations and quotation marks omitted)); *Perry v. High Level Dev. Contracting & Sec. LLC*, No. 20-CV-02180, 2022 WL 1018791, at *14 (E.D.N.Y. Mar. 16, 2022) ("Where time entries are vague, duplicative, or otherwise inadequate, a court may make an across-the-board reduction or percentage cut, in the amount of hours." (internal quotation marks omitted)), *adopted by* 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022); *Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5, 29 (S.D.N.Y. 2015) (noting that "[t]his analysis takes into consideration overstaffing, the skill and experience of the attorneys, as well as redundant, excessive, or unnecessary hours"); *Siegel v. Bloomberg L.P.*, No. 13-CV-01351, 2016 WL 1211849, at *13 (S.D.N.Y. Mar. 22, 2016) ("There is also no question that courts routinely apply percentage reductions to requested attorneys' fees based on the performance of inefficient, duplicative, or unnecessary work.").

As for the second category of deficiencies, a review of the billing record suggests that it was standard practice for the firm to "block bill" their time (i.e., list all tasks performed on a specific day for the case alongside a total time expended that day without specifying the amount of time associated with each task)—indeed, although there are approximately 1,000 separate

billing entries, only 14 multi-task entries break down the time spent on each task. (*See generally* Doc. 79-1). While this billing practice "is not per se prohibited . . . where such entries make it hard to discern the reasonableness of time allotted to a given task, courts do consider its prevalence in deciding whether reduction is appropriate." *Mayo-Coleman v. Am. Sugars Holding, Inc.*, No. 14-CV-00079, 2019 WL 1034078, at *5 (S.D.N.Y. Mar. 5, 2019); *see also Shanfa Li v. Chinatown Take-Out Inc.*, No. 16-CV-07787, 2020 WL 7647178, at *5 (S.D.N.Y. Dec. 23, 2020). This practice "is most problematic where large amounts of time (e.g., five hours or more) are block billed; in such circumstances, the limited transparency afforded by block billing meaningfully clouds a reviewer's ability to determine the projects on which significant legal hours were spent." *Cruz v. Space NY 50th St LLC*, No. 17-CV-04936, 2019 WL 4061492, at *5 n.11 (S.D.N.Y. Aug. 28, 2019) (quoting *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 53 (S.D.N.Y. 2015)). In this case, there are no less than 37 separate block billed entries for 5.00 hours or more—accounting for 237.90 (i.e., 26%) of the hours billed. (Doc. 79-1 at 7, 19, 20, 25, 26, 29, 32-34, 36-37, 43-46, 49, 50-51). Here again, "where counsel relies on . . . block billing practices which make it difficult for a court to assess reasonableness, an across-the-board fee reduction is warranted." *Avedana v. Casa Ofelia's Bakery LLC*, No. 20-CV-02214, 2021 WL 4255361, at *16 (E.D.N.Y. Aug. 19, 2021), *adopted by* 2021 WL 4248857 (E.D.N.Y. Sept. 17, 2021); *see also Li v. Ichiro Sushi, Inc.*, No. 14-CV-10242, 2022 WL 1137094, at *2 (S.D.N.Y. Apr. 16, 2022) ("Reductions to block billing are appropriate when five or more hours are billed together creating 'an unacceptable risk that the aggregated total exceeded the reasonable hours worked on compensable tasks.'" (quoting *Benihana, Inc. v. Benihana of Tokyo, LLC*, No. 15-CV-07428, 2017 WL 6551198, at *3 (S.D.N.Y. Dec. 22, 2017)).

Third and finally, the billing record is littered with vague descriptions untethered to a specific task. These descriptions include phrases such as "strategize," "internal correspondence," "status and strategy conference," and "attention to e-mails." (*See generally* Doc. 79-1). The last description, "attention to e-mails" (or a derivative like "attention to correspondence"), appears no less than 77 times in the billing record. (*See generally id.*). Based upon the Court's review, "the time entries . . . are frequently opaque, to the point where the Court cannot understand or meaningfully appraise the work that was done, let alone whether the time claimed to have been expended on it was reasonable." *Cajero Torres*, 2022 WL 2788655, at *18. In this third category, when encountering such vagaries, "courts routinely apply across-the-board reductions . . . ." *Diaz v. KC Plumbing, LLC*, No. 19-CV-04321, 2021 WL 7500316, at *15 (E.D.N.Y. Mar. 1, 2021); *see also Inga*, 2021 WL 3624666, at *15 ("[A] court may reduce the fees requested for billing entries that are vague and do not sufficiently demonstrate what counsel did." (internal quotation marks omitted)); *Espinosa v. Perez*, No. 18-CV-08855, 2020 WL 2950978, at *2 (S.D.N.Y. Jan. 27, 2020) (explaining that "[a] billing entry is 'vague' if it 'lacks sufficient specificity for the Court to assess the reasonableness of the amount charged in relation to the work performed'" (quoting *Handschu v. Special Servs. Div.*, 727 F. Supp. 2d 239, 250 (S.D.N.Y. 2010)), *adopted by* 2020 WL 1130743 (S.D.N.Y. Mar. 9, 2020).

The hyperbolic nature of this fee application is highlighted further by comparing the circumstances here to cases of the same ilk. *See, e.g.*, *Gao v. Jian Song Shi*, No. 18-CV-02708, 2021 WL 1949275, at *19 (E.D.N.Y. Apr. 30, 2021) (finding 151.80 hours reasonable where, in a one-plaintiff case, "[c]ounsel engaged in extensive discovery, including multiple depositions, and the case survived summary judgment"), *adopted sub nom. Bin Gao v. ABC Corp.*, No. 18-CV-02708, 2021 WL 1946322 (E.D.N.Y. May 15, 2021); *Garcia-Severino*, 2020 WL 7239678, at *6

11

(finding $46,263.75 request unreasonable in an uncomplicated one-plaintiff case following a "few-hour" bench trial); *Espinosa*, 2020 WL 2950978, at *3 (concluding, after a one-day bench trial, that 195.20 hours was reasonable in a one-plaintiff case); *Sai Qin Chen v. E. Mkt. Rest., Inc.*, No. 13-CV-03902, 2018 WL 3970894, at *4 (S.D.N.Y. Aug. 20, 2018) ("Considering this action involved *seven* different plaintiffs, *extensive* motion practice and discovery, multiple depositions, and *a three-day trial*, 453.93 hours spent on this litigation is reasonable." (emphasis added)).

The number hours expended in this case—914.20—is irrefutably unreasonable. This was a wage-and-hour case, pressed on behalf of three individuals, by an experienced labor law firm. (Doc. 79 ¶ 11; *see also* Doc. 79-1 at 52). The period at issue covered less than two years: (1) Gonzalez worked for Defendants from January 2016 through November 2017; (2) Arce worked for Defendants from May 2016 through November 2017; and (3) Urrutia worked for Defendants from February 2016 through December 2017 (minus one month in or around April 2017). (Compl. ¶¶ 25, 31, 37). Counsel for Plaintiffs: (1) prepared a 20-item document demand and an 8-item interrogatory; (2) responded to a 30-item document demand and 8-item interrogatory; (3) produced 10 pages of discovery to Defendants; (4) received and reviewed 255 pages of discovery from Defendants; (5) defended 3 depositions; (6) took 2 depositions; (7) prepared pretrial materials required by this Court's Individual Practices; and (8) prepared for and appeared at various conferences. (*See generally* Doc. 79-1; *see also* Doc. 81 ¶¶ 7-8). This Memorandum Opinion and Order—excluding Minute Entries and other miscellaneous notations—represents only the *89th docket entry* in this case.

Taking into account all relevant factors under applicable law, the shortcomings outlined above, the fee applications granted in comparable litigation, and the Court's own experience—experience that includes forty years of litigation experience—a 50% reduction of the fee sought

(adjusted for the reduction in Ms. Feder's fee) is appropriate. *See, e.g.*, *Dillatoro v. D'Onofrio*, No. 16-CV-00254, 2022 WL 2467573, at *4 (E.D.N.Y. May 25, 2022) (recommending an "across-the-board reduction of 50% of the hours billed by plaintiffs' counsel"); *Agureyev v. H.K. Second Ave. Rest., Inc.*, No. 17-CV-07336, 2021 WL 847977, at *12 (S.D.N.Y. Mar. 5, 2021) ("To bring the hours expended into a reasonable range, '[c]ourts in this District have applied percentage reductions of up to fifty percent.'" (quoting *Williams v. Metro-N. R.R. Co.*, No. 17-CV-03847, 2018 WL 3370678, at *12 (S.D.N.Y. June 28, 2018) (alteration in original)); *Lopez v. 1923 Sneaker, Inc.*, No. 18-CV-03828, 2021 WL 1845057, at *11 (E.D.N.Y. Mar. 5, 2021) ("One acceptable method for 'trimming the fat' from a fee application, and one that consumes fewer judicial resources than a painstaking review of each time-entry, is for the court to impose an 'across-the-board percentage' cut of the total amount of time claimed." (quoting *Fundora v. 87-10 51st Ave Owners Corp.*, No. 13-CV-00738, 2015 WL 729736 at *2 (E.D.N.Y. Feb. 19, 2015)), *adopted by* 2021 WL 1259623 (E.D.N.Y. Apr. 6, 2021); *cf. Alicea v. City of New York*, 272 F. Supp. 3d 603, 612 (S.D.N.Y. 2017).[3]

In accordance with the foregoing, accounting for the reduction in Ms. Feder's hourly rate, Plaintiffs' application seeks fees in the amount of $312,950.00. Reducing that amount by 50% results in the total amount of $156,475.00, which the Court awards as a reasonable attorneys' fee.[4]

---

[3] The Second Circuit recently reaffirmed that, in order "[t]o address . . . redundancy or vagueness, 'the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.'" *Raja v. Burns*, 43 F.4th 80, 87 (2d Cir. 2022) (quoting *Lilly v. City of New York*, 934 F.3d 222, 234 (2d Cir. 2019)). The Second Circuit, in that case, found that the trial court erred in applying an across-the-board reduction of 40% to the attorneys' fees sought. *Id*. at 91. That case is readily distinguishable from this case and presents a valuable contrast reaffirming the Court's conclusion here—that case involved a total of *51* billing entries concerning only *189* hours of work (or, phrased another way, about 5% of the billing entries and 20% of the hours claimed here).

[4] Ms. Feder billed a total of 14.50 hours for a total fee of $2,897.50. At an hourly rate of $100, that fee is reduced to $1450.00 (meaning a difference of $1,447.50 in the amount sought).

## CONCLUSION

In light of the foregoing, Plaintiffs' motion for attorneys' fees and costs is GRANTED IN PART. Plaintiffs are awarded $156,475.00 in attorneys' fees along with $5,530.55 in costs. The parties are directed to file the paperwork required by *Cheeks* within ten days from the date of this Memorandum Opinion and Order.

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 78.

Dated:   White Plains, New York
        August 26, 2022

**SO ORDERED:**

_____
PHILIP M. HALPERN
United States District Judge